**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**


**BRENDA L. GLOVER**                                                          **PLAINTIFF**


**v.**                              **CASE NO. 4:06-CV-323 GTE**


**JEFFERSON PILOT FINANCIAL**
**INSURANCE COMPANY and ODOM'S**
**TENNESSEE PRIDE SAUSAGE, INC.**
**LONG-TERM DISABILITY PLAN**                                 **DEFENDANTS**


<u>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**</u>

This ERISA case is before the Court on cross-motions for summary judgment. Plaintiff Brenda Glover appeals the denial of benefits under a Long Term Disability Insurance Plan (hereinafter "LTD Plan") sponsored by her employer, Odom's Tennessee Pride Sausage, Inc. ("Odom"). For the following reasons, the Court reverses the decision of Jefferson Pilot Financial Insurance Company to deny Plaintiff the full twenty-four months of "own occupation" long-term disability benefits. The Court remands this case solely for the purpose of determining whether Plaintiff is entitled to receive "any occupation" long-term disability benefits.

**I.        <u>Overview</u>**

Plaintiff Brenda Glover was hired by Odom's as a Packer in its Boning Department on May 24, 2002. Plaintiff's responsibilities included packing and sawing ribs, removing defects, maintaining quality and yields, keeping the product off the floor, and sanitizing the equipment prior to her shift. Odom sponsored an employee welfare benefit plan that provided both short and long-term disability benefits. Jefferson Pilot Financial Insurance Company ("Jefferson Pilot") issued to Odom a group policy used to fund such benefits.

On May 9, 2004, Plaintiff was involved in a car accident.  Plaintiff stopped working due to cervical and lumbar strain on May 11, 2004.  Ultimately, Jefferson Pilot approved and paid short-term and long-term benefits as of May 19, 2004, through April 10, 2005.  Jefferson Pilot denied benefits beyond April 10, 2005.

After exhausting her appeals with Jefferson Pilot, Plaintiff Glover filed the present lawsuit seeking back benefits, attorney's fees and costs on February 17, 2006.  Plaintiff originally filed her Complaint in Pulaski County Circuit Court, but the Defendants timely and properly removed the action based on the fact that the LTD Plan at issue is an employee welfare benefit plan governed by ERISA, a federal law.  ERISA provides that the resolution of benefit claims under ERISA governed plans shall be determined exclusively by federal law.  29 U.S.C. § 1132(a)(1)(B); *Prudential Ins. Co. of America v. National Park Medical Center, Inc.*, 413 F.3d 897, 907 (8th Cir. 2005).

## II.   The Plan

The LTD plan at issue defines "total disability" as:

TOTAL DISABILITY OR TOTALLY DISABLED means that an Insured Employee, due to an injury or Sickness is unable:

1. during the Elimination Period and the Own Occupation Period, to perform each of the main duties of the Insured Employee's regular occupation;  and
2. after the Own Occupation Period, to perform each of the main duties of any gainful occupation for which the Insured Employee's training, education, or experience will reasonably allow.

(AR 0432).

The "Own Occupation Period" is twenty-four months.  It appears that this period began for Glover on August 10, 2004.  (AR 0159).  Accordingly, Plaintiff would be entitled to recover disability benefits for the 24 month period beginning August 10, 2004, by showing that she could

not perform her prior duties as a boner on Tennessee Pride's assembly line.  After 24 months, Glover would not be considered disabled unless her injuries prevented her from performing "any gainful occupation."

The parties dispute the appropriate burden of proof in light of the fact that Jefferson Pilot initially awarded long-term disability benefits, but then reversed its earlier decision.  The consensus view appears to be that while the Eighth Circuit has not explicitly required a change in the insured's condition before an insurer may terminate disability benefits, it does require that a termination of disability benefits requires a significant change in the information available to the insurer between the granting and the terminating of benefits. *See Morgan v. Unum Life Ins. Co. of Am.,* 346 F.3d 1173, 1178 (8th Cir.2003);  *McOsker v. Paul Revere Life Ins. Co.,* 279 F.3d 586, 589 (8th Cir.2002); *Walke v. Group Long Term Disability Ins.,* 256 F.3d 835, 840 (8th Cir.2001).  That did not happen in this case.

Additionally, although the Court has not found a case explicitly addressing this issue, it appears that under the language of this Plan, the Plaintiff arguable was entitled to notice and an opportunity to submit proof that she remained disabled.  The Plan language requires the payment of disability benefits if the insured employee:

1. is Totally Disabled;
2. requires the regular attendance of a Physician; and
3. submits proof of continued Total Disability, at the Insured Employee's expense, to the Company upon request.

(AR 0441).  The Plan further provides that "Proof of continued Disability and regular attendance of a Physician must be given to the Company within 30 days of the request of proof."  (AR 0434).  Read in context, the Court concludes that the claimant for disability benefits must submit proof to show that she is disabled in the first instance and she must continue to provide such proof upon Jefferson Pilot's request.  However, the LTD Plan also contemplates that Jefferson

Pilot must both request the information and allow Plaintiff time to provide it before terminating disability benefits previously awarded.  Jefferson Pilot failed to comply with that provision in this case.

In the Court's view, there are two problems with the manner in which Jefferson Pilot terminated Plaintiff's benefits.  First, there was no significant change in the information available to Jefferson Pilot between its decision to grant and to terminate benefits.  Second, on the record, Jefferson Pilot should have provided Plaintiff with notice and an opportunity to show that she remained disabled before terminating her benefits.

### III.   Standard of Review

District courts review an ERISA plan administrator's decision to terminate benefits *de novo*, unless the benefits plan vests the administrator with the discretionary authority to determine benefits eligibility or to interpret the terms of the plan. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 957-58 (1989).  Where the plan administrator has such discretionary powers, courts review a denial-of-benefits claim with a deferential eye, overturning the administrator's decision only if it was "arbitrary and capricious."  *See*, *e.g.*, *Lickteig v. Business Men's Assur. Co. of America*, 61 F.3d 579, 583 (8th Cir. 1995).

Odom's LTD Plan lacks any language providing the plan administrator with  discretionary authority to determine benefit eligibility or to construe plan terms.  The Defendants have not explicitly conceded this point.  However, they have failed to point to any Plan language that would trigger a discretionary standard of review or to otherwise contradict Plaintiff's contention that a *de novo* standard applies, and thereby implicitly conceded the point.  Accordingly, the Court is obliged to review *de novo* the plan administrator's decision to deny benefits.  Such review requires the Court to evaluate the record to determine if Plaintiff Brenda Glover is

disabled under the terms of the Plan, without giving deference to Jefferson Pilot's decision.  *See Davidson v. Prudential Ins. Co. of Am.*, 953 F.2d 1093, 1095 (8th Cir. 1992);  *Walke v. Group Long Term Disability Ins.*, 256 F.3d 835, 839-840 (8th Cir. 2001).

Under a *de novo* standard of review, "a district court has more discretion to allow the parties to introduce evidence in addition to that submitted to the plan decision-maker."  *McKeenhan v. Cigan Life Ins. Co.*, 344 F.3d 789, 793 (8th Cir. 2003).  The Court may also "make findings of fact after a bench trial or on a stipulated fact record, rather than conducting the summary judgment review that is customary when applying the abuse-of-discretion standard."  *Id.*, at 793.

### IV.   Material Facts

The car accident giving rise to Plaintiff's injuries occurred on May 9, 2004, in a mall parking lot, when a woman backed into the right front panel of Plaintiff's car.  (AR 0063, 0086).  Plaintiff saw the woman backing up, honked her horn and applied her brakes, but was unable to avoid contact.  Plaintiff reported that she was wearing her seatbelt at the time.  (AR 0086).

Plaintiff did not seek medical treatment on the day of the accident.  However, Plaintiff sought treatment at a hospital emergency room on the following two days.  The hospital records are not a part of the Administrative Record.

Plaintiff saw Dr. Gary Nunn on May 13, 2004.  (AR 0067).  Plaintiff reported to Dr. Nunn that since the parking lot accident five days earlier she had experienced "constant neck pain, mid back pain, low back pain, and intermittent headaches as well as intermittent right leg pain" and that "it generally hurts to move all over."  (AR 0067).  Dr. Nunn recommended moist heat, ultrasound, and massage for Plaintiff's back and prescribed Amitriptyline, Ibuprofen and Soma. (AR 0069).  Dr. Nunn recommended that Plaintiff rest at home until he could re-evaluate her.  *Id.*

Plaintiff saw Dr. Nunn for the second time on June 3, 2004.   At that time, Plaintiff reported that her headaches had improved, but she continued to have pain in the neck, upper back, and right leg.  Dr. Nunn noted on physical examination that the Plaintiff was limping.  Dr. Nunn advised Plaintiff to continue physical therapy and to return for reevaluation in three weeks.  (AR 0072).

Plaintiff applied for short-term disability benefits on June 8, 2004.  (AR 0101).  Dr. Nunn filled out the Attending Physician's statement that accompanied the application.  Therein, Dr. Nunn listed a diagnosis of "cervical and thoracolumbar sprain." (AR 0103).  The "subjective symptoms" Dr. Nunn reported were "muscle pain."  Under "objective findings" Dr. Nunn wrote "limited range of motion." *Id*.  Dr. Nunn placed the following restrictions on Plaintiff:  "no strenuous activities, overhead lifting, bending, prolonged sitting or standing." *Id*.  Dr. Nunn estimated Plaintiff would be able to return to work in two to four weeks. *Id*.  Jefferson Pilot awarded  Plaintiff short-term disability benefits as of May 19, 2004.  (AR 0462).

On  June 24, 2005, Plaintiff saw Dr. Nunn for a follow-up appointment.  Dr. Nunn noted that Plaintiff's headache, neck pain, and right hip contusion had "resolved" but that she continued to have low back pain and discomfort.  Dr. Nunn recommended that Plaintiff continue with physical therapy and return in three weeks for "reevaluation."  (AR 0075).

By letter dated July 7, 2005, Jefferson Pilot notified Plaintiff that it was extending her short-term benefits until July 15, 2004, but that additional medical documentation would be required to extend her benefits beyond that date.  (AR 00403).

Plaintiff saw Dr. Nunn on July 15, 2004.  She complained of "daily discomfort" and reported "very little improvement."  At this time, Plaintiff had undergone approximately nine weeks of therapy.  Dr. Nunn's impressions were cervical neck sprain, unchanged; posttraumatic

headaches, unchanged;  thoracolumbar spine sprain, unchanged;  and right hip contusion, unchanged.  Physical therapy was discontinued.  (AR 0077).

Plaintiff next saw Dr. Nunn on August 5, 2004.  She reported her pain had improved, but that she continued to have daily soreness and discomfort.  Dr. Nunn recommended that she resume taking Skelaxin and Ibuprofen.  (AR 0079).

By letter dated August 5, 2004, Jefferson Pilot denied Plaintiff's request to continue short-term benefits beyond July 15, 2004. (AR 0262).  Plaintiff appealed this decision, noting that she had "headaches, back & neck aches" and was unable to "stand or sit for a long period of time." Plaintiff further reported that if she was to return to work she "would not be able to perform my job."  She stated that she was taking the following medications: Ibuprofen, Skelalaxin, and Amitriptyline.  She also noted that the medications could cause "dizziness or drowsiness" and that this also impaired her from doing her job.  (AR 0081).  Defendants point out that Plaintiff failed to mention whether the drugs actually caused her dizziness or drowsiness.  It does not appear, however, that the Defendants sought to clarify this issue with Plaintiff.  Moreover, the Defendants did not give credence to the letter from Dr. Nunn that accompanied Plaintiff's appeal letter. Therein, Dr. Nunn states:

> Ms. Glover has been restricted to home secondary to use of
> sedative medications.  She is not to do any overhead lifting, or
> repetitive bending or lifting.
> If you have any questions, please give me a call.

(AR 0082).

Despite receiving this report from Dr. Nunn, Jefferson Pilot initially denied Plaintiff's appeal and stuck by its decision to discontinue short-term benefits after July 15, 2004.  (AR 0385-0386).  The decision appears to have been based on the fact that Plaintiff had been diagnosed only with sprains and treated only with medications and physical therapy.  At this point, Plaintiff was

solely under the care of Dr. Nunn, as he had not yet referred her to another physician or caused any tests other than range-of-motion testing to be conducted.

Finally, during an office visit on September 2, 2004, Dr. Nunn referred Plaintiff to Dr. Kevin Collins[1] with Martin Bowen Hefley Knee & Sports in Little Rock, Arkansas for evaluation. During that visit, Plaintiff stated that her low back pain had gotten worse, the headaches continued, and the neck pain had not improved.  (AR 0084).

Plaintiff saw Dr. Collins for the first time on September 15, 2004.  His notes describe Plaintiff's "history of present course" in part as follows:

> Patient was in her normal state of health when she was involved in an MVA  . . . She was putting on the brake and crashed with a head injury and had a whiplash response.  . . .  She has been seen by Dr. Nunn who has had her going to MCH for nine to twelve weeks with little to no results. . . .In any event, she has been battling with this pain sometimes but now it has been made worse.  She has unbearable constant pain for four months and feels disabled by the pain.  Everything makes it worse.  Medications help a little bit and also when she sleeps.  She describes a deep ache at the top of her head, burning med back pain, stabby pins and needles, deep ache, bilateral shin pain, worse on the left side than the right.  She states that she has numbness in the back of her knees and her hands.  Sometimes the knees don't want to bend and she has to limp.  She has bowel and bladder incontinence, saddle paresthesias, no weakness or falls.  The pain seems severe throughout the day.  She states with sitting, it feels like a ton of bricks at the base of her back bone.  She allows pressure on her low back when she stands.  With lying down, she is still in pain.  She has a headache in all positions.  She sleeps two and a half hours a night. . . . Loud noises, massage, pressure, coldness, exercise, movement, going to work, and fatigue all aggravate her symptoms.  Patient is here for further rehab evaluation and consultation at the request of Dr. Nunn.

(AR 0086).

---

[1]  The clinic's website indicates that Dr .Collins is board certified by the American Board of Physical Medicine & Rehabilitation.  *See* www.kneeandsports.com.

Dr. Collins noted on physical examination that the Plaintiff had "difficulty with sitting and standing" and that she walked "very slowly and methodically with increased pain behaviors."  He further noted that Plaintiff was "unable to move her neck and lumbar spine in any functional way on exam."  (AR 0087).  Dr. Collins ordered an MRI and added Ultracet for pain to go along with the medications Plaintiff was already taking: Ibuprofen, Skelaxin, and Amitriptyline.  Dr. Collins also ordered epidural spinal injections for pain.  (AR 0086-87).

Dr. Collins' MRI, which was ordered on September 15, 2004, approximately four months after the accident, was the first such test ordered for Plaintiff.  The MRI scan was done on September 17, 2004.   The MRI showed abnormalities, primarily broad-based disk protrusions in both the lumbar and the cervical spine.  Defendants characterize this condition as "common among adults," but the MRI results appear to have caused Dr. Collins to recommend that Plaintiff remain off work.  Additionally, Defendants description of the MRI findings do not comport with Dr. Collins' descriptions, noted below.

Plaintiff returned to Dr. Collins on September 27, 2004.  In reviewing the MRI results, Dr. Collins noted:

> Patient comes in to go over her MRI.  She has a pretty impressive display of findings on the MRI.  Her lumbar spine showed a broad based protrusion at L-3, 4, prominent broad based protrusions at L-4, 5 with prominent lateral ligamentum flavum hypertrophy.  Her lateral recesses are compromised more on the left than the right.  There is a question of left side tranversing of the L-5 nerve root being compromised.  There is a broad based protrusion at L-5, S-1 with collapse of the disc noted.  There is also some slight posterior displacement of the right side S-1 nerve root.  Cervical findings show a broad base protrusion of disc material at C-4, 5, and C-5, 6.  There is some severe narrowing of the left neuroforaminal at C-4, 5.

(AR 0090).

Dr. Collins recommended therapy for Plaintiff's "five level disc disease, myofascial pain, .

. . occipital neuralgia and S-I joint pain." Dr. Collins also indicated that he was going to try to find a pain doctor for Plaintiff and he prescribed Darvocet for breakthrough pain. Dr. Collins stated that Plaintiff "should continue off work at this time." (AR 0090).

Plaintiff returned to Dr. Nunn on September 30, 2004. This time Dr. Nunn elevated his impressions to probable cervical and thoracic herniation. (AR 0091). Dr. Nunn noted that Plaintiff was to complete the proposed epidural injections ordered by Dr. Collins and to return for revaluation in one month.[2]

Jefferson Pilot requested Plaintiff to provide: (1) a police report of the May 9, 2004 accident; (2) ambulance records; and (3) hospital emergency room records, by letter dated October 19, 2004. (AR 0375). Plaintiff did not provide a police report or hospital records (there was no ambulance called to the scene). Plaintiff states that she provided all the documents in her possession. It appears that Defendants may have obtained the hospital records because they have referred to statements from UAMS previously. In any event, these missing records, in light of Plaintiff's subsequent medical documentation did not justify Jefferson Pilot's denial of Plaintiff's claim. Further, there is no indication that Jefferson Pilot ever advised Plaintiff that her failure to submit the hospital emergency records and the police report (assuming one was prepared) was the basis for the denial of her claim.

On October 7, 2004, Plaintiff Glover applied for long-term benefits. Dr. Nunn completed

---

[2] Defendants are critical of Dr. Nunn for his continued recommendations that Plaintiff return to him for "revaluation" despite the fact that he was providing no treatment and conducting no further diagnostic tests. Such criticisms, even if legitimate, are not Plaintiff's fault, who could not control the tests Dr. Nunn ordered or the extent of his physical examination. Further, such criticisms ignore the fact that Dr. Nunn was apparently Plaintiff's primary physician, who was obviously entitled to rely on the testing and opinions of Dr. Collins, a specialist. Further, this argument is somewhat disingenuous given the fact that Jefferson Pilot required that Plaintiff to be under the continuing care of a physician in order to continue to receive disability benefits.

the accompanying doctor's statement.  (AR 0107).  Dr. Nunn listed her primary diagnosis as "occipital neuralgia" and noted "back pain" and "knee pain."  Dr. Nunn answered "indefinitely" to the question of how long Plaintiff would be "continuously totally disabled from [her] regular occupation."  *Id.*

Plaintiff continued to see Dr. Nunn and also Dr. Collins.  On November 11, 2004, Dr. Collins saw Plaintiff and noted: "Patient has had injections of her back, neck and medicines and therapy.  Nothing appears to be working.  I will start another set of injections."  Dr. Collins further indicated that he was sending Plaintiff to an orthopedic spine surgeon for evaluation of her "multiple herniated discs."  (AR 0098).

After reevaluating Plaintiff's appeal of the earlier denial of her short-term disability benefits, which included a review of the MRI, Jefferson Pilot reversed its earlier position and determined that Plaintiff was entitled to continuation of her short-term disability benefits.  The letter so advising is dated November 23, 2004.  (AR 0364).

By letter dated December 6, 2004, Jefferson Pilot advised Plaintiff that she needed to submit additional documentation to support her claim.  By letter dated December 21, 2004, Jefferson Pilot notified Plaintiff that it had approved her application for long-term disability benefits.  Plaintiff's benefits were retroactive to August, 10, 2004, which was the end of the ninety-day elimination period.  (AR 0159-60).  The letter further advised Plaintiff that she could receive such benefits 24 months if she remained eligible throughout the Own Occupation period, but that after that period Plaintiff's claim would be re-evaluated to determine whether she met the definition for disability from any occupation.  (AR 0160).

On January 11, 2005, Plaintiff was evaluated by neurosurgeon Ron Williams to determine whether surgical intervention would help her condition.  Dr. Williams reported to Dr. Collins that

because most of Plaintiff's pain was non-radicular that surgery was not indicated.  Dr. Willams

also observed that Plaintiff's range of motion in the back and neck were markedly restrictive.

Although Dr. Williams noted that the MRI did not show any evidence of "real nerve root

compression" that it did show bulging discs at L4-5, L5-S1, L3-4, C3-4 and C5-6.  (AR 0249).

Dr. Collins saw Plaintiff on January 31, 2005.  He reported that Plaintiff's pain was still

9/10, that Plaintiff had "multiple herniated disc disease," and that he would continue to "hold her

off work."  Dr. Collins also indicated that he would fill out forms for continued disability benefits

and for a handicapped sticker.  (AR 0217).

At Jefferson Pilot's request Plaintiff completed a Rehabilitation Survey and submitted it

on February 7, 2005.  (AR 0284-287).  Therein, Plaintiff noted that she could sit, stand, and walk

for only five minutes at a time; that she could drive for only 15 minutes, and that she could

"never" lift or carry any weight at all.  (AR 0285).  Plaintiff indicated that she would not be able

to return to her job because it was too strenuous and because of her restrictions.  (AR 0286).

Plaintiff also reported: "I liked my job.  I am still learning my body it is like a baby learning how

to walk only I be so excited wanting to do things forgetting that I can't but I still don't give up I

keep trying." *Id.*

On February 14, 2005, Plaintiff saw endocrinologist, Dr. Richard J. Rapp for treatment of

a goiter.  (AR 0250-51).  Defendants make much of the fact that Plaintiff did not report her pain to

Dr. Rapp.  Plaintiff apparently did advise Dr. Rapp that she had been in a motor vehicle accident

and received epidural steroids.  However, the record does not reveal that Plaintiff reported any

neck or back pain. In fact, Dr. Rapp's record states in the history section that Plaintiff "has had no

neck pain or neck discomfort."  (AR 0250).   Plaintiff was also reported to be in no acute distress.

On physical examination, Plaintiff's back was reported to be "non-tender" and to  have "no pain

to palpation over the spinous processes." (AR 0251). The record is clearly inconsistent with Plaintiff's other medical records as it relates to her back pain, in particular. However, Dr. Rapp was evaluating Plaintiff solely for a thyroid condition and not for anything related to her back. The Court can certainly understand why Dr. Rapp's medical record would have aroused Jefferson Pilot's suspicion and triggered a request for more information. However, the Court can not say that Dr. Rapp's visit alone justifies completely discounting Plaintiff subjective reports of back and neck pain.

On February 28, 2005, Plaintiff saw Dr. Collins. Dr. Collins notes from that visit appear to express some frustration that Plaintiff was continuing to report subjective pain of 9/10 despite functional improvement. Dr. Collins noted that Plaintiff was "within normal limits bilaterally during conversations in the gym." In the assessment and plan section of the records, Dr. Collins wrote:

> At this point, we are pretty much at a standstill. From a rehab perspective, I have nothing further to add. We have done 38 treatment visits between me and Dr. Nunn and Dr. Williams. At this point, I don't think it is justified to continue since the pain is still the same subjectively despite subjective physical improvement.[3]

(AR 0214). In this note, Dr. Collins expresses no opinion regarding whether Plaintiff can return to work.

By letter dated March 28, 2005, Jefferson Pilot advised that it had reviewed Plaintiff's claim and determined that it was unable to pay further benefits. In the letter, it appears that Jefferson Pilot relied heavily on the fact that Plaintiff had "received conservative medical treatment" and that there was no need for surgery. The letter observed that Dr. Collins had

---

[3] The Court wonders whether Dr. Collins said or intended to say "objective physical improvement."

continued to hold her off work in his January 31, 2005, notes, while concluding that there was "no physical exam to support his off work restrictions and/or limitations." (AR 0220). The record indicates that Jefferson Pilot terminated Plaintiff's long-term benefits after previously awarding them without providing Plaintiff any notice or opportunity to be heard prior to the termination of benefits. This is contrary to the terms of the LTD Plan and the letter awarding benefits. *See* discussion, *infra*.

Plaintiff appealed Jefferson Pilot's decision. In a handwritten letter dated April 8, 2005, Plaintiff wrote that she wanted to appeal the denial of her benefits. She stated that she was unable to perform her job and that she was still taking the following medications: Ibuprofen, Skelaxin, Ultracet and Amitryptilene. The letter indicates that Plaintiff provided Jefferson Pilot with a copy of her MRI results, and a list of her job duties and restrictions. Plaintiff also reported that she could not walk 100 yards without stopping. Finally, Plaintiff stated that she had not been able to keep her appointment with Dr. Jordan due to finances. (AR 0212).

On May 11, 2005, Plaintiff was seen by Dr. Collins. He noted in his assessment that "We have made recommendations for her job duties that I stand by. She needs to be on modified duties. I haven't heard anything from human resources." (AR 0134).

On May 23, 2005, Jefferson Pilot notified Plaintiff that it was unable to approve any long-term disability benefits. The letter notes that Plaintiff had provided the following information in connection with her appeal:

       – Neurological consult, J. Zachary Mason, MD, 5/4/05
       – Office visit notes, Kevin Collins, MD, 9/15/04, 9/27/04,
       1/31/05, 2/28/05
       – MRI results, 9/17/04

(AR 0201).

On June 13, 2005, Plaintiff saw Dr. Nunn. She advised Dr. Nunn that she continued to

have "discomfort and pain." (AR 0142). Dr. Nunn concluded that Plaintiff had "no ability to resume work secondary to her pain." Defendants discount this statement in its entirety because it appears to have been based on Plaintiff's subjective reports of pain.

On the same day, Plaintiff went to Dr. Collins office to fill out paperwork. In that note, Dr. Collins notes that he filled out Jefferson Pilot Financial Information. He also states: "I think she would go back to work. I have nothing further to add." (AR 0135). Defendants make much of this statement. However, it appears to contradict virtually everything Dr. Collins said prior and subsequently thereto regarding Plaintiff's ability to perform her job as a packer. For that reason, the Court concludes that it is more likely than not that, assuming the June 13, 2005, note was accurately transcribed, that Dr. Collins subsequently changed his opinion.

On June 22, 2005, Plaintiff had a second MRI. The results were basically the same. Although the person reading the MRI noted that the abnormalities were "of uncertain clinical significance" or "unlikely to be clinically significant" the same abnormalities, including disc dessication and bulging discs, were noted. (AR 0198-99).

Plaintiff visited Dr. Nunn on June 28, July 11 and August 15 2005. She continued to report pain. During the July 11th visit Plaintiff reported that she continued to have daily pain and discomfort which did not allow her to have the same stamina or physical abilities that she had prior to the motor vehicle accident. (AR 0145-148).

On July 12, 2005, Plaintiff submitted a handwritten letter to appeal the previous decision to deny benefits. Plaintiff claimed that she was disabled due to "arthritis in her spine" and that she was unable to do "any kind of work." (AR 0196). She further stated that her medication was highly sedative and that she could not perform her duties as a rib packer.

On July 18, 2006, Plaintiff saw Dr. Collins. Dr. Collins noted that her repeat MRI "pretty

much shows similar findings." Dr. Collins indicated that there was not enough new on the MRI to justify further evaluation and that he would defer to her primary care doctor on this point. Dr. Collins noted that from a rehab perspective, "we have pretty much maxed out." He also stated: "I do not feel she is a candidate to do some of the duties of her job working at Odom Tennessee Pride." (AR 0136).

By letter dated July 25, 2005, Jefferson Pilot advised Plaintiff that she needed to provide updated medical records from May 5, 2005 to the present. The letter provided Plaintiff until September 4, 2005, to provide the records. It further advised that it was not making a final decision on her claim at this time. (AR 0195).

On August 18, 2005, attorney Leon Marks wrote Jefferson Pilot on Plaintiff's behalf to advise that he would be handling Plaintiff's appeal and to request a copy of the file. (AR 0153). On September 2, 2005, Jefferson Pilot provided Mr. Marks with a copy of the file. (AR 0149).

On September 21, 2005, Mr. Marks provided Jefferson Pilot with additional medical records, as requested. The submissions included a September 15, 2005, letter from Dr. Nunn stating:

> Ms. Glover has been disabled secondary to injuries sustained in motor vehicle accident May 9, 2004, because of injury to neck, thoracic spine and lumbar spine she is unable to lift greater than 10 lbs and unable to perform any repetitive movement and unable to stand greater than 15 minutes.
>
> If you have any other questions please give our offices a call.

(AR 0132).

Mr. Marks also included a pre-printed form completed by Dr. Collins on September 15, 2005. Dr. Collins checked the line stating: "[Brenda Glover] was advised to remain off work / out of school." Dr. Collins' other options on the form included "was permitted to return to light

- 16 -

work" and "was released to return to regular work."  Dr. Collins did not select those options.

Under "special instructions," Dr. Collins wrote that Plaintiff's restrictions were no lifting, no

bending, no standing over 10-15 minutes at a time, no pushing and no pulling.  (AR 0137).

On October 12, 2005, Mr. Mark's provided Jefferson Pilot with the Social Security

decision finding Plaintiff disabled from all work and awarding disability benefits retroactive to the

date of the car accident.  (AR 123).

On or about November 6, 2005, Jefferson Pilot sent Plaintiff's file to Dr. Anthony

Metcalfe, a certified independent medical examiner, for review to determine if there were

significant restrictions and limitations preventing the claimant from returning to her own

occupation as a rib packer for Odom's from April 10, 2005, forward.  Dr. Metcalfe reviewed the

office notes from Drs. Nunn, Collins, and Mason, and the results of Plaintiff's September 17,

2004 and June 21, 2005 MRI's.  (AR 0412-415).  Dr. Metcalfe did not conduct an independent

medical examination of the Plaintiff;   he only reviewed records.[4]

Dr. Metcalfe concluded that the Plaintiff was able to return to her occupation as a rib

packer, which required medium work, from April 10, 2005, forward.  While Dr. Metcalfe

conceded that Plaintiff appeared to "display pain behavior consistent with chronic pain syndrome"

he concluded that there was "no correlation between her subjective complaints of excruciating

pain and her physical examinations" and thus "insufficient objective findings to support any

restrictions or limitations" on the work Plaintiff could perform.  Dr. Metcalfe discounted the MRI

results by concluding that the findings were "of uncertain clinical significance" and showed "no

_____

[4] Jefferson Pilot had the right under the Policy to have the Plaintiff examined, at its
expense, by a physician of its choice.  The Policy provides that Jefferson Pilot may exercise this
right "as often as it is reasonably required."  (AR 0434).  Jefferson Pilot apparently decided to
forego this option in favor of a paper review.

spinal cord compression or nerve root entrapment." (AR 0414).

Jefferson Pilot provided a copy of Dr. Metcalfe's file review to Dr. Nunn and to Plaintiff's attorney Mr. Mark's. Jefferson Pilot requested Dr. Nunn's response by December 7, 2005. (AR 0119). Dr. Nunn did not respond.

On January 31, 2006, Jefferson Pilot advised Plaintiff's counsel Mr. Mark's that it was standing by its earlier decision to deny long-term disability benefits after April 10, 2005. Therein, Jefferson Pilot notes that "the medical documentation currently in *Ms. Foster's* file fails to substantiate a condition or conditions that are so severe she has been prevented from performing her occupation beyond April 10, 2005." (AR 0114)(emphasis added). The denial letter goes on to refer to *Ms. Foster* three times. The record contains no explanation for Jefferson Pilot's repeated referral to the wrong claimant.

On February 1, 2006, Jefferson Pilot denied Glover's appeal. (AR 0115).

**IV.     Analysis**

**(a)     Procedural Irregularity**

While Jefferson Pilot was clearly within its rights to ask Plaintiff for additional information to support her claim for disability benefits, the Court questions the manner in which Jefferson Pilot initially terminated Plaintiff's benefits. After approving long-term benefits in December of 2004, Jefferson Pilot notified Plaintiff on March 28, 2005, that her benefits were being terminated based on a thorough review of information from Dr. Nunn. There is no indication in the record that Jefferson Pilot advised Plaintiff that it needed continuing proof of her disability or that it provided her with any advance notice that it was contemplating terminating her benefits. Rather, it appears that Jefferson Pilot simply reversed its prior position that Plaintiff was entitled to an award of long-term benefits without any advance notice to Plaintiff. Such a

procedure arguably violated the letter of the LTD Plan.  Additionally, it does not appear there was a significant change in the information available to Jefferson Pilot that justified its abrupt reversal of position.

While the LTD Plan obligated Plaintiff to provide continuing proof of a disability, it entitled Plaintiff to notice and an opportunity to prove that she remained under a disability.  This holding is dictated by any fair reading of the LTD Plan as a whole.  The Plan states, "Proof of continued Disability and regular attendance of a Physician must be given to the Company within 30 days of the request of proof."  (AR 0434).  The same concept was expressed to Plaintiff in the December 21, 2004, letter awarding her long-term benefits.  That letter advised Plaintiff:

### YOUR RESPONSIBILITIES

> You are required by this policy to remain under the regular care and attendance of a legally qualified physician who can verify your continuing disability.  Occasionally, we will send you supplementary claim forms to provide us with continuing proof of disability.  Your attending physician will need to complete these forms and return them to us by the specified date in order to avoid any possible delay in your benefit payments.

(AR 0160).

Thus, under the terms of the Plan and the December 21, 2004, award letter,  Plaintiff had the right to believe that she would receive benefits for a twenty-four month period unless and until Jefferson Pilot requested continuing proof of her disability.   Jefferson Pilot violated the LTD Policy when it terminated Plaintiff's long-term disability benefits on March 28, 2005, without notice and an opportunity to be heard.  The fact that Jefferson Pilot provided Plaintiff with an opportunity to be heard after-the-fact does not remedy this violation.

Additionally, Jefferson Pilot terminated Plaintiff's benefits in the absence of any documentation that she was actually able to perform her job duties.  While Jefferson Pilot's letter states that it relied on information received from Dr. Nunn there is nothing in the record to

indicate that Dr. Nunn ever released Plaintiff from the physical restrictions that would have made it possible for Plaintiff to perform her job as a rib packer for Odom's.

**(b)**      **Social Security Decision**

Glover applied for and was approved for Social Security disability benefits, by decision dated September 21, 2005.  "Although the Social Security Administration's determination is not binding, it is admissible evidence to support an ERISA claim for long-term disability benefits." *Riedl v. Gen. Am. Life Ins. Co.,* 248 F.3d 753, 759 n. 4 (8th Cir.2001).  The ALJ opinion notes that a State agency medical consultant "provided the claimant with a residual functional capacity assessment in which it was determined that she could perform medium work.  While this assessment was reasonable based on the evidence available at that time, additional evidence received since then persuades me that the claimant is more limited than originally thought."  (AR 0128).  The decision does not indicate the additional evidence on which the ALJ relied.  The ALJ concluded that Glover was suffering from the following "severe" impairments:  "post traumatic headaches and multi-level disc protrusion of the lumbar and cervical spine with persistent antalgic gait and seriously compromised functional capacity despite extensive physical therapy."  (AR 0128).

**(c)**      **Jefferson Pilot's decision**

When Jefferson Pilot decided *sua sponte* to reverse its earlier award of long-term disability benefits, there was no information in the record to support a substantial change in Plaintiff's condition.  The notes from Plaintiff's endocrinologist Dr. Rapp noting that Plaintiff was in no acute distress were not focused on Plaintiff's back problems, but were made for the purpose of treating a thyroid goiter.  Dr. Rapp did not consider, much less answer, the issue of whether Plaintiff could perform her job duties as a rib packer.  The Court has no hesitation in concluding

that this one record from Dr. Rapp alone did not justify rejecting the opinions of Dr. Nunn and Dr. Collins that Plaintiff could not perform her job duties.

When Jefferson Pilot made its final decision, it had the paper review of Dr. Metcalfe. Dr. Metcalfe did not see Plaintiff, talk to Plaintiff, or examine Plaintiff. No functional capacity review of Plaintiff was performed. Although Jefferson Pilot could have required Plaintiff to undergo an examination under the terms of the Policy, it did not go that extra step. The Eighth Circuit has specifically held that opinions of a reviewing physician are entitled to less deference than those of a treating physician. *Dodson v. Woodmen of the World Life Ins. Soc.*, 109 F.3d 436, 439 (8th Cir. 1997).

Jefferson Pilot has not addressed the continuing conclusions of Dr. Nunn and Dr. Collins that Plaintiff could not perform the duties of her job as a rib packer. Dr. Metcalfe did not mention, much less address, Dr. Nunn's specific limitations imposed on Plaintiff, as of September 15, 2005, that Plaintiff should not lift anything greater than 10 lbs., perform any repetitive movements, or stand longer than 15 minutes. Accordingly, it was unnecessary to Dr. Nunn to respond, even assuming he received Dr. Metcalfe's paper review. Finally, there is no indication that Jefferson Pilot or Dr. Metcalfe telephoned Dr. Nunn to discuss the limitations imposed with him directly, although Dr. Nunn specifically offered to address any questions by phone. (AR 0132).

The Court recognizes that a treating physician's opinion need not be afforded special weight under ERISA. *Black & Decker Disability Plan v. Nord*, 538 U.S. 882, 834 (2003). However, that does not mean that work restrictions imposed by a treating physician may be ignored or summarily dismissed. While Jefferson Pilot is not required to accord special deference to the opinions of Glover's physicians, it "may not 'arbitrarily refuse to credit a claimant's reliable

evidence, including the opinions of a treating physician[,]' " while "relying solely on one independent reviewing physician's opinion." *Burch v. Hartford Life & Accident Ins. Co.*, 383 F.Supp.2d 1119, 1125-26 (W.D.Ark. 2005) (quoting *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 123 S.Ct. 1965, 1967, 155 L.Ed.2d 1034 (2003)).

Finally, it is unclear whether Dr. Metcalfe had "appropriate training and experience in the field of medicine involved. . . ." such that Jefferson Pilot was entitled to rely on his opinion.  29 C.F.R. § 2560.503-1(h)(3)(iii);  *see also Morgan v. Unum Life Ins. Co. of Am.*, 346 F.3d 1173, 1177-78 (8th Cir. 2003)(plan administrator's denial of disability benefits was arbitrary and capricious where administrator relied upon opinion of in-house physician who had no expertise in claimant's disorder).

It is further significant that Dr. Metcalfe did not find that Plaintiff's complaints of pain were not credible.  In fact, he noted that her pain behavior was consistent with chronic pain syndrome.  While Dr. Metcalfe concluded that there insufficient objective findings to support any work restrictions on Plaintiff, he did not find that her subjective pain was not real.  A plan administrator may not refuse to consider a claimant's subjective complaints of disabling pain and " may not deny benefits simply because the only evidence of a disabling condition is subjective evidence."  *Collins v. Cont'l Cas. Co.*, 87 Fed. App'x 605, 607 (8th Cir. 2004).  While pain symptoms may be difficult to assess, "disability plan administrators may not require objective medical evidence of the cause if there is consistent evidence of disability symptoms, and no finding that the claimant is not credible in her complaints."  *Abram v. Cargill, Inc.*, 395 F.3d 882, 887 n.3 (8th Cir. 2005).

Defendants argue that Plaintiff is not credible based solely on some inconsistencies in the record.  The Court concludes, based on a review of the entire record in this case, that Plaintiff's

subjective reports of disabling pain may not be disregarded in light of her abnormal MRI's which demonstrated multi level herniated disc disease and the conclusions of her treating physicians who repeatedly stated that her condition prohibited her from performing her prior job.

Jefferson Pilot does not dispute that Plaintiff's MRI is abnormal or that the MRI results document her multilevel degenerative disc disease.  Instead, it concludes the MRI is not abnormal enough because it does not show "clear evidence of neural compression."  (AR 0110). Particularly in light of the fact that Jefferson Pilot's own reviewing physician observed that Plaintiff's self-reported pain was consistent with chronic pain syndrome, it was improper for Jefferson Pilot to require further objective evidence of a disabling condition.  Even assuming that the MRI is not sufficient objective evidence, the Court holds that in this particular case, on this particular record and on a de novo review, that it was not reasonable for Jefferson Pilot to expect Plaintiff to provide further objective clinical evidence.  *See Cook v. Liberty Life Assurance Co. of Boston*, 320 F.3d 11, 21 (1ˢᵗ Cir. 2003)(given the nature of chronic fatigue syndrome, a disease for which there is "no 'dipstick' laboratory test," it was not reasonable to expect that claimant to provide objective clinical evidence of the disorder).

Jefferson Pilot apparently makes much of the fact that Plaintiff's condition does not require surgery.   Plaintiff was evaluated by Dr. Mason, a neurosurgeon, on May 4, 2005.  Dr. Mason concluded that there was no need for neurosurgical intervention.  Dr. Mason's findings in no way contradicted Plaintiff's subjective reports of pain and discomfort.  Additionally, he made objective findings that her MRI revealed "multilevel degenerative disc disease" including a mild disc bulge at L5-S1.  (AR 0204-05).  On physical examination, Dr. Mason observed "low back pain with spasms" and "lumbar flexion, extension, and rotation" at 50% of normal.  (AR 0205).  He also noted "very mild stenosis at C4-5 and C5-6."  *Id*.  The fact that Plaintiff is not a candidate for

surgery does not justify rejecting her subjective complaints of pain and her treating physician's conclusions that she is unable to perform her prior job duties.

The Court has reviewed the entire administrative evidence in this case.  The Court concludes that at all relevant times Plaintiff Brenda Glover was disabled from performing her job as a rib packer for Odom's.  Accordingly, Plaintiff was entitled to receive disability payments under the LTD Plan for the entire twenty-four (24) month "own occupation" disability period.

   **(d)      Whether Plaintiff can perform "any gainful occupation"**

The Court recognizes that Plaintiff is not entitled to benefits beyond the end of the twenty-four "own occupation" period unless she is can not perform any gainful occupation.  It appears that the "own occupation" period expired during the course of this litigation.[5]   It does not appear that Jefferson Pilot has ever determined whether Plaintiff can perform the job duties of any occupation.  Accordingly, the case must be remanded to Jefferson Pilot for further proceedings..

On remand, Jefferson is hereby directed to conduct the analysis necessary to determine whether Plaintiff can perform "any occupation."  It appears likely that this will require a vocational evaluation, since the relevant question is actually whether Glover can perform any occupation for which she is suited by virtue of education, training or experience.  *See Gunderson v. W.R. Grace and Co. Long Term Disability Income Plan*, 874 F.2d 496 (8th Cir. 1989).  This determination is likely to take some time.

To ensure that Jefferson Pilot makes a timely determination on this issue, the Court directs that Jefferson Pilot shall either make its "any gainful occupation" not later than **May 1, 2007**, or shall begin paying Plaintiff interim long-term disability benefits from that date forward if no determination has been made by May 1, 2007.  Of course, if no "own occupation" benefits are

_____

   [5]  If the Court's calculation is correct, this would have occurred on August 10, 2006.

found to be owing then Jefferson Pilot may discontinue any payments made from May 1, 2007, forward.  Alternatively, if Plaintiff qualifies for "any occupation" benefits, then Jefferson Pilot will owe back benefits for the period during which no payments were made.

<strong>CONCLUSION</strong>

For the reasons herein stated,

IT IS THEREFORE ORDERED that the Plaintiff's Motion for Summary Judgment, (Dkt. # 12) be, and it is hereby, GRANTED.  IT IS FURTHER ORDERED that the Defendants' Joint Motion for Summary Judgment (Dkt. #15) be, and it is hereby, DENIED.  Jefferson Pilot's decision to deny long term disability benefits to the Plaintiff Brenda L. Glover is hereby REVERSED.  The Court concludes that Plaintiff is entitled to the full twenty-four months of "own occupation" long-term disability benefits.  Jefferson Pilot is ordered to reinstate Glover's back benefits plus interest from **April 10, 2005**, through the end of the applicable "own occupation" benefit period.

The Court remands this case solely for the purpose of permitting Jefferson Pilot to consider the issue of whether Plaintiff is entitled to receive "any occupation" long-term disability benefits.  Jefferson Pilot shall either make its "any occupation" benefits determination by **May 1, 2007,** or it shall begin paying such benefits going forward from that date.

Dated this  21st  day of February, 2007.


____ /s/Garnett Thomas Eisele_____
UNITED STATES DISTRICT JUDGE